UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHERRIE L. HOYER,<br><br>      Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>      Defendant. | No. CV-05-0105-CI<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DIRECTING ENTRY OF<br>JUDGMENT FOR DEFENDANT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 12, 15) submitted for disposition without oral argument on November 28, 2005. Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney David R. Johnson represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff, 52-years-old at the time of the administrative decision, protectively filed an application for Supplemental Security Income benefits (SSI) on December 4, 2000, alleging

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 1

disability as of June 1973[1] due to neck, back, and hip injuries, depression, arthritis and tendinitis. (Tr. at 119.)

Plaintiff, who was 5'5" tall, 175 pounds, divorced with no dependent children, was 52-years-old at the time of the hearing. (Tr. at 49.) She graduated from high school and participated in a CETA clerical training program in 1982 followed by one year of college in 1998. She had past work as an office assistant, food server and cook. Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge Richard Hines (ALJ). The ALJ denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE DECISION

The ALJ concluded Plaintiff had never engaged in substantial gainful activity and had generalized pain complaints,[2] but the impairment did not meet the Listings. The ALJ rejected Plaintiff's testimony as not fully credible. (Tr. at 21.) The ALJ concluded Plaintiff retained the residual capacity to perform a wide range of light work, including past work as a food server and office assistant; alternatively, under the Grids, the ALJ also concluded Plaintiff was not disabled.

---

[1] The applicable period at issue based on the date of the SSI application is December 2000.

[2] There is no challenge Plaintiff's mental impairments were not severe and the medical record supports such a finding. (Tr. at 185, 331.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 2

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ improperly rejected the opinions of the treating and examining physicians without sufficient reasons and improperly rejected Plaintiff's testimony as not credible.

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 3

last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1. <u>Examining and Treating Physician</u>

Plaintiff contends the ALJ erroneously rejected the findings of treating physician Dr. Greg Sharp, who treated her from July 20, 1998, through at least October 17, 2003. Dr. Sharp opined Plaintiff had experienced very high levels of pain and her condition was not expected to improve. (Tr. at 433.) Dr. Sharp also noted in 2002 that Plaintiff had positive 17 of 18 trigger points to support a diagnosis of fibromyalgia. (Tr. at 435.) Plaintiff also contends the ALJ erroneously rejected the opinion of examining physician, Dr. Robert Rose. In May 2003, Dr. Rose diagnosed Plaintiff with polyarthralgia and polymyalgia, related to repetitive trauma, impairments that limited her to standing or walking less than two hours and sitting less than six hours in an eight-hour work day.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 4

(Tr. at 438, 440.)  Plaintiff contends the ALJ failed to provide sufficient reasons to reject these opinions.  Defendant responds the ALJ properly considered and rejected the opinions as being inconsistent with treatment notes and activities of daily living.

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.  While a treating physician's uncontradicted medical opinion will not receive "controlling weight" unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Social Security Ruling 96-2p, it can nonetheless be rejected only for "'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).  Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with clear and convincing reasons. *Holohan*, 246 F.3d at 1202-03.  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the

lack of medical support a doctor's report based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

In addressing Dr. Sharp's opinion, the ALJ noted:

> Similarly, the blanket statements of disability dated October 24, 2002, and November 21, 2002, by Gregory Sharp, DO, . . . are benign in content, and are not supported by the medical evidence. And his statement of "an advanced case of fibromyalgia" with "17 of the 18 trigger points" is also not supported by any other documentary evidence, and is not supported by the overall evidence of record. And more importantly, is contrary to all other medical opinion evidence of record.

(Tr. at 20.) With respect to the limitations noted by Dr. Rose, the ALJ commented:

> In this case, the undersigned finds that based on the evidence of record, there is simply no underlying impairment of any real significance to sufficiently explain or produce the pain and limitations that she complains of, specifically a limited sitting capacity and an inability to stand or walk for prolonged periods. [Tr. at 439.] According to the evidence of record, the claimant has sought treatment for generalized pain and fatigue complaints since 1997 with no determinable etiology. Physical examinations have been unremarkable, and diagnostic image testing have demonstrated minimal findings. She did report improvement with physical therapy, and her pain complaints were eventually listed as myofascial pain syndrome and somatic dysfunction, denoting unrealistic and a preoccupation with physical symptomatology.

(Tr. at 21.)

The ALJ also relied on the testimony of the medical consultant, Dr. Almquist, who rejected the diagnosis of fibromyalgia, noting Dr. Sharp had not examined Plaintiff for the presence of pain at control points. (Tr. at 46.) Dr. Almquist also remarked with respect to the limitations noted by Dr. Rose in October 2003, that examination findings were normal and Plaintiff's system complex exceeded the

physical findings in all modalities.  (Tr. at 47, 438-439.)

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician, but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The reasons provided by the ALJ for rejecting the fibromyalgia diagnosis by Dr. Sharp and limitations noted by Dr. Rose are specific and legitimate and supported by the record. Additionally, Dr. Almquist's opinion is consistent with the record.

In 1998, Plaintiff had physical therapy for treatment of pain in her right elbow and numbness and tingling in her hand. There was no evidence of atrophy, spasm, and notations of full range of motion and symmetrical reflexes. (Tr. at 164.) Physical therapy assisted the pain. (Tr. at 162.) Plaintiff continued to do well overall and was enjoying her classes. (Tr. at 199.)

Plaintiff continued to seek medical treatment for sporadic complaints of pain in her back, neck and shoulder in 1999 and again in 2000 following a motor vehicle accident on March 28, 2000. (Tr. at 209, 253, 280.) Shoulder pain improved with physical therapy in February 2000 and a somatic component was noted. (Tr. at 288, 289.) It appears the residuals from the motor vehicle accident resolved by May 2000. (Tr. at 275.) Other medical appointments during the later months of 2000 included treatment for kidney stones, vaginitis, allergies, ear infections, rhinitis, and surgery to repair a nasal septal deviation. (Tr. at 317.)

In January 2001, Plaintiff again complained of pain in her elbow, shoulder, back and neck. (Tr. at 318. 321.) It was noted the overall bio-mechanics of her spine were fair. (Tr. at 327.) No further treatment was provided until October 2001 when trigger point injections were done for left hip pain. (Tr. at 367.) There was full range of motion of the hip and Plaintiff reported a noticeable improvement in November 2001. (Tr. at 369.) In December, Plaintiff sought treatment for pain in her upper back, neck and right

posterior shoulder after a slip and fall on the ice.  (Tr. at 373.)
At that time Plaintiff was diagnosed with myofascial pain syndrome
with a somatic dysfunction.  Injections and physical therapy were
recommended and provided during December and January.  Improvement
was noted on January 9, 2002.  (Tr. at 388.)

In June 2002, Plaintiff reported a flare-up of pain after several months of feeling well.  (Tr. at 398.)  On August 26, 2002, Plaintiff reported more time was occurring between pain episodes.  (Tr. at 405.)  Then, in October and November, Dr. Sharp diagnosed fibromyalgia with little chance of improvement; that diagnosis was made following injection treatments in September and October with little improvement noted.  (Tr. at 444, 445.)  The diagnosis was not supported by further examination.

There were no treatment notes in November and December until after Plaintiff injured herself at the end of December while trying to start a fire.  She reported the injury caused pain and numbness in her shoulders, neck, and arms.  An examination revealed normal gait, full range of motion, and normal bilateral strength.  (Tr. at 456.)  She was given an injection.  (Tr. at 456.)  At an appointment on January 24, 2003, no complaints were made regarding neck or back pain.  (Tr. at 457.)  She was treated with injections for complaints of pain in her neck in June 2003 after cleaning her patio.  (Tr. at 458.)  No further mention of neck and shoulder pain was made until October 17, 2003; an injection was provided and Plaintiff was diagnosed with a cervical spine somatic dysfunction.  (Tr. at 462.)

Thus, it appears although Plaintiff has been treated over the years for back, neck and shoulder pain, that treatment has been sporadic and conservative, and, at times, with reference to somatic

complaints. Thus, the ALJ's reasons for rejecting Dr. Sharp's diagnosis of fibromyalgia are specific and legitimate and supported by the treatment record.

Additionally, his rejection of the functional limitations noted by Dr. Rose was also supported by specific and legitimate reasons. Dr. Rose in his examination noted the functional limitations were based on voluntary input or lack thereof, that Plaintiff's symptom complex exceeded the physical findings in all modalities, there were no obvious findings of joint or vascular abnormalities, and a functional capacities examination would be required to determine maximum residual capacity. (Tr. at 438-440.)

The ALJ concluded Plaintiff was able to perform a full range of light and sedentary work based on an ability to sit, stand or walk for two hour intervals with normal breaks, up to six hours a day per activity. He found she can lift 20 pounds occasionally and ten pounds frequently. (Tr. at 22.) She was found to be limited to only occasional overhead activities based on upper extremity and neck pain complaints. Based on this functional capacity, Plaintiff has the ability to perform her past work as a food server and/or office assistant. Alternatively, using the Grids as a framework, Plaintiff would not be considered disabled. 20 C.F.R. Subpart P, App. 2, 202.14, 15. This is consistent with Plaintiff's daily activities: she reads, listens to music, watches television, provides care for her children, attends church and eats out on occasion, walks ½ mile two to three times a week. She has not had hospitalizations since December 2000 and has not taken anti-depressant drugs since that time. (Tr. at 55, 57.) She does not drive because her license was suspended. Light and sedentary work

is consistent with findings in 1997 (Tr. at 173-74) and less than the medium work recommended by Dr. Almquist.  Thus, there is evidence to support the ALJ's findings.

2. Credibility

Plaintiff contends the ALJ erroneously rejected her testimony as not fully credible.  She notes she was unable to work because of constant pain that became worse as the day wore on, lack of concentration, and severe fatigue. (Tr. at 53.)  Plaintiff stated she did not wash the dishes or make beds and that she seldom vacuumed, and did no yard work or gardening. (Tr. at 56.)  Thus, she maintains her activities were consistent with disability.

In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, see *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986), the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id*. at 1281-82.  If this test is satisfied, and if there is no evidence of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Id*. at 1284.  The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and

effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  If a reason given by the ALJ is not supported by the evidence, the ALJ's decision may be supported under a harmless error standard. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard)*; Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same).  There is no evidence of malingering. (Tr. at 331.)  Thus, Plaintiff's testimony must be rejected with clear and convincing reasons.

In addition to his finding there were no objective findings to support the diagnosis of fibromyalgia and functional limitations noted by Dr. Rose, the ALJ stated:

> Despite citing on-going pain complaints, the claimant confirmed at hearing that she continued to be independent in her activities of daily living, took walks, watched television, and with her daughter's help, continued to engage in household chores including cooking, cleaning and shopping.

(Tr. at 22.)  Additionally, the ALJ found only conservative treatment had been recommended and improvement had followed the treatment.

This court concludes Plaintiff has not met the first prong of the *Cotton* test, that is, objective evidence to support the existence of an underlying impairment other than mild degenerative disc disease and, given her age, a certain degree of degenerative arthrosis. Additionally, there was evidence of a somatic preoccupation with physical symptomatology.  Finally, if the first

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 12

1  prong is met, there is evidence Plaintiff's daily activities were
2  inconsistent with disability.  She provided daily childcare for her
3  children, drove them to school, shopped, cooked, did errands, light
4  housework, socialized daily, and had good concentration and
5  persistence.  (Tr. at 331-332.)   Thus, the ALJ did not err in
6  rejecting Plaintiff's complaints of disabling pain.  Accordingly,
7      **IT IS ORDERED**:
8      1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12) is**
9  **DENIED.**
10      2.   Defendant's Motion for Summary Judgment dismissal **(Ct.**
11  **Rec. 15) is GRANTED**; Plaintiff's Complaint and claims are **DISMISSED**
12  **WITH PREJUDICE.**
13      3.   The District Court Executive is directed to file this
14  Order and provide a copy to counsel for Plaintiff and Defendant.
15  The file shall be **CLOSED** and judgment entered for Defendant.
16      DATED January 9, 2006.
17
18                            S/ CYNTHIA IMBROGNO
                        UNITED STATES MAGISTRATE JUDGE
19
20
21
22
23
24
25
26
27
28